IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| THOMAS K. JEPSON,<br><br>             Plaintiff(s),<br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner,<br>Social Security Administration,<br><br>             Defendant(s). | CASE NO. 5:11-cv-02360 EJD<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Docket Item No(s). 19, 20] |

Plaintiff Thomas K. Jepson ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) to obtain review of the Social Security Administration's (the "Administration") final decision denying his claim for disability benefits. Specifically, Plaintiff's Motion for Summary Judgment seeks an order reversing the final decision of the Administration and awarding benefits, or alternatively remanding for further administrative proceedings. See Docket Item No. 19. Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant"), opposes Plaintiff's motion and seeks summary judgment in the Administration's favor. See Docket Item No. 20.

Having considered the parties' papers along with the administrative record, the court has determined that Defendant's Motion for Summary Judgment should be granted and Plaintiff's Motion for Summary Judgment should be denied.

1

Case No. 5:11-cv-02360 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

# I.  BACKGROUND

## A.  Procedural History

On March 21, 2008, Plaintiff applied for Supplemental Security Income Benefits ("SSI"), alleging a continuing disability which began on January 1, 2003. Administrative Transcript ("TR"), at 90. Plaintiff's claim was initially denied on June 11, 2008. Id. at 60-63. Plaintiff then requested reconsideration of that decision, which was also denied on September 4, 2008. Id. at 67-71.

Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ"), which occurred before ALJ Frederick C. Michaud on August 25, 2009. Id. at 17-57. After the hearing, the ALJ ordered a consultative psychological evaluation for Plaintiff, which the ALJ reviewed as part of the analysis. Id. In a written decision dated November 13, 2009, the ALJ ultimately found, after recounting the medical evidence and testimony, that Plaintiff has the residual functional capacity to perform "light work"[1] and concluded that Plaintiff had not been under a disability since March 21, 2008. Id.

Plaintiff then sought review of the ALJ's determination. Id. at 12-13. On January 28, 2011, the Appeals Council denied the request for review, and the ALJ's decision became the final decision of the Administration. Id. at 7-9.

Plaintiff filed the instant action requesting judicial review of the Administration's decision on May 13, 2011. See Compl., Docket Item No. 1. Plaintiff moved for summary judgment on November 7, 2011. See Docket Item No. 19. Defendant filed a cross motion for summary judgment on December 5, 2011. See Docket Item No. 20.

## B.  Plaintiff's Personal, Vocational and Medical History

Plaintiff was born on April 16, 1957. Tr. at 90-96. He was therefore 45 years old at the

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing ad pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.967.

onset of alleged disability. Plaintiff graduated from high school and completed vocational training courses in the fields of electrical, air conditioning, and heating. Id. at 117. He was employed as an electrician from 1991 to 2003. Id. at 112. Plaintiff stopped working in 2003 due to his medical condition. Id. at 111.

Plaintiff claims to be in chronic "major" pain due to joint deterioration and prior injuries, which at times have rendered him "bedridden." Id. at 111. Plaintiff testified at the hearing that at the age of 22, he was involved in a major motorcycle injury that left both of his legs completely dislocated at the knee and resulted in torn cartilage. Id. at 46-47. This accident also caused a dislocation of Plaintiff's shoulder and injury to his spine. Id. Plaintiff testified that he was involved in another car accident a few years later which caused further injury to his spine. Id. at 47.

X-rays of Plaintiff's spine taken in 2007 revealed narrowing and degeneration of 3 of Plaintiff's discs. Id. at 168-171. Another x-ray of Plaintiff's right knee also demonstrated some degeneration. Id. However, x-rays of Plaintiff's left knee and shoulders appeared normal. Id. Based on these x-rays and the remaining relevant information, Dr. Clark E. Gable determined in May, 2008, that Plaintiff could sit up to 6 hours per day with breaks, could stand and/or walk up to 6 hours per day with breaks, could lift, push or pull 25 pounds frequently and 50 pounds occasionally without problems with fine finger and hand movements. Id. at 184-186. A Physical Residual Functional Capacity Assessment completed by Dr. Ernest E. Wong in 2008 contained a similar determination. Id. at 187-192.

The medical evidence also suggested that Plaintiff may suffer from a cognitive condition, particularly depression. Id. at 176-177; 199-200. Plaintiff testified that he was taking Prozac and Elavil. Id. at 52. Dr. Jacklyn Chandler, who completed the consultative psychological evaluation at the request of the ALJ, determined that Plaintiff suffers from depressive disorder. Id. at 206-208.

## II.     DISCUSSION

### A.     Standard for Reviewing the ALJ's Decision

Pursuant to 42 U.S.C. § 405(g), the district court has authority to review an ALJ decision. The court's jurisdiction, however, is limited to determining whether the denial of benefits is

3
Case No. 5:11-cv-02360 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

supported by substantial evidence in the administrative record. Id. A district court may only reverse the decision if it is not supported by substantial evidence or if the decision was based on legal error. Id.; accord Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).

"Substantial evidence" is more than a scintilla, but less than a preponderance. Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). This standard requires relevant evidence that a "[r]easonable mind might accept as adequate to support a conclusion." Vertigan, 260 F.3d at 1049 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). The court must affirm the ALJ's conclusion so long as it is one of several rational interpretations of the evidence. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).

### B. Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The impairment must also be so severe that a claimant is unable to do previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given the claimant's age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

"The claimant carries the initial burden of proving a disability." Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). If the claimant proves a prima facie case of disability, then the Commissioner has the burden of establishing that she can perform "a significant number of other jobs in the national economy." Thomas, 278 F.3d at 955. "The Commissioner can meet this burden through the testimony of a vocational expert or by reference to the Medical Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2." Id.

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 416.920. The steps require the following analyis:

(1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled; otherwise the

evaluation proceeds to step two.

(2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 416.920(c). If not, the claimant is not disabled; otherwise the evaluation proceeds to step three.

(3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments. 20 C.F.R. § 416.920(d). If so, the claimant is disabled; otherwise the analysis proceeds to step four.

(4) The ALJ must determine the claimant's residual functional capacity despite limitations from the claimant's impairments. 20 C.F.R. § 416.920(e). If the claimant can still perform work that the individual has done in the past, the claimant is not disabled. If he cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 416.920(f).

(5) In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled. Considering a claimant's age, education, and vocational background, the Commissioner must show that the claimant can perform some substantial gainful work in the national economy. 20 C.F.R. § 416.920(g).

**C.   Application**

The ALJ made the following findings and conclusions on the five steps: (1) for step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 21, 2008; (2) for step two, the ALJ determined Plaintiff has multiple joint complaints of pain, which qualifies as a severe impairment; (3) for step three, the ALJ determined that Plaintiff does not have an impairment that meets or medically equals the requirements of the Listing of Impairments; (4) for step four, the ALJ determined that Plaintiff does not have the residual functional capacity to perform his past work, but can perform the full range of light work; and (5) for step five, the ALJ determined that there are jobs that exist in the national economy that Plaintiff can perform based on the testimony of a vocational expert. Tr. at 17-27.

Plaintiff does not directly disagree with the ALJ's determination concerning his *physical*

1  impairments.  Instead, Plaintiff takes issue with the ALJ's treatment of the evidence concerning his
2  *psychological* condition.  Specifically, Plaintiff argues that the ALJ inappropriately rejected Dr.
3  Chandler's opinion that Plaintiff suffers from depression.  Plaintiff further contends that Plaintiff
4  was not provided a full and fair hearing because the ALJ did not procure all of Plaintiff's mental
5  health records.  The court addresses each of Plaintiff's arguments in turn.

### 1. Rejection of Dr. Chandler's Report

In the context of Social Security determinations, the weight prescribed to medical opinions depends in part on whether they are offered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

"The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." Id.  For this reason, an ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Id. at 831.

Dr. Chandler conducted a comprehensive psychological evaluation of Plaintiff, which included a clinical interview and testing.  Tr. at 206-209.  During the testing process, Dr. Chandler observed that Plaintiff "demonstrated mildly fluctuating attention and concentration, which appeared to be due to his psychiatric symptoms," "worked at a mildly slowed pace," and "presented as moderately dysphoric." Id.  She diagnosed Plaintiff with pain disorder and depressive order, and opined that "[e]ven though [Plaintiff] appears capable of functioning cognitively, he is likely to have moderate to marked difficulty functioning under normal stress in a work setting" as well as "moderate to marked difficulty relating to and interacting with supervisors and co-workers." Id.

The ALJ rejected Dr. Chandler's report as "overly restrictive and unsupported by substantial evidence," citing various reasons.  Id. at 20.  The ALJ noted that while the documentary evidence contained some references to depression, these records "show[] no treatment for any mental health condition," and although Plaintiff testified that his treating physician had prescribed anti-depressant medication, the record did not contain anything to support that statement.  Id.  The ALJ also indicated Dr. Peter Fay, Plaintiff's treating physician, "never refers [Plaintiff] to a psychologist or

other mental health professional for further evaluation or treatment." Id. From this, the ALJ concluded that "the treating physician adequately addressed [Plaintiff's] psychological symptoms." Id.

The ALJ also explained that Plaintiff did not allege psychological problems during the hearing; "[i]n fact, the claimant focused his disability allegations on physical complaints and he did not testify to any mental limitations." Id. The ALJ went on to indicate that Plaintiff "has stated that he has not sought, or required psychotherapy, inpatient psychiatric treatment, or any other mental health treatment." Id.

On this record, it is clear that the ALJ articulated clear and convincing reasons for rejecting Dr. Chandler's report. First, the ALJ considered the entirety of the medical evidence presented to find that Dr. Chandler's diagnosis of "marked" impairment was inconsistent with the record. The ALJ first noted that Dr. Fay never treated Plaintiff for depression or referred Plaintiff for psychological testing. "Typically, the opinion of a treating physician is afforded more weight than a non-treating physician's opinion." Kellerman v. Astrue, No. C 11-4727 PJH, 2012 U.S. Dist. LEXIS 105143, at *31, 2012 WL 3070781 (N.D. Cal. July 27, 2012) (citing 20 C.F.R. § 404.1527(c)(2)). The ALJ also rejected the opinions of two other non-treating doctors who had assessed Plaintiff for depression because the conclusions contained in their brief "checkbox" reports were "not based on objective medical evidence or clinical findings." Tr. at 25. This was a proper reason to discount these opinions. Molina v. Astrue, 674 F.3d 1104, 1111-12 (9th Cir. 2012) ("[T]he ALJ may 'permissibly reject[ ] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions.'" (quoting Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996)); see also Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001) ("[T]he regulations give more weight to opinions that are explained than to those that are not.").

Second, the ALJ found Dr. Chandler's opinion that Plaintiff was "mildly dysphoric" insubstantial because it was based primarily on her own observations of Plaintiff rather than on the results of administered testing or any objective findings. Tr. at 21. This was a sufficient explanation for rejecting that opinion. See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ

7
Case No. 5:11-cv-02360 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Third, the ALJ cited Plaintiff's lack of significant complaint about psychological impairment as well Plaintiff's failure to seek treatment for depression as further reasons to reject Dr. Chandler's opinion. Tr. at 20. Although the ALJ's characterization of Plaintiff's testimony is not entirely accurate since Plaintiff did, in some form, attempt to articulate a mental limitation and referenced past psychological treatment at the hearing ("I saw a psychiatrist for a few times. . . . I just can't think straight anytmore."), the ALJ nonetheless determined that Plaintiff's complaints of pain and its limiting effects were not entirely credible. Tr. at 23 ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."); Tr. at 24 ("The claimant has repeatedly alleged being 'bedridden' for several years, but when examined the claimant was found to be in good physical health, with no muscle atrophy."). Having made a credibility finding, the ALJ could then properly rely on it and use Plaintiff's lack of complaint and lack of treatment as additional reasons to reject Dr. Chandler's opinion. See Burch, 400 F.3d at 681 ("The ALJ is permitted to consider lack of treatment in his credibility determination.").[2]

In sum, the ALJ supported the rejection of Dr. Chandler's findings with clear and convincing reasons, all of which were explained and based on the ALJ's reasonable interpretation of the record. The ALJ's determination that Plaintiff's mental impairments cause no more than a "mild" limitation is therefore supported by substantial evidence. To the extent Plaintiff invites an alternative interpretation of the medical evidence, this court cannot oblige. 42 U.S.C. § 405(g); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir.

---

[2] While the court recognizes the Ninth Circuit's criticism of using lack of treatment as a reason to reject complaints of mental illness, such authority is not implicated here since Plaintiff's complaints about mental impairment, even broadly construed, were minimal and vague at best and the lack of treatment unexplained. Compare Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) ("[W]e have particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'") (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)), with Burch, 400 F.3d at 680-81.

1995) (an ALJ's factual findings must be upheld if supported by inferences reasonably drawn from the record and if evidence exists to support more than one rational interpretation, the court must defer to the ALJ's decision).[3]

### 2. Duty to Develop the Record

Plaintiff argues that the medical record was not fully developed because the ALJ failed to procure his medical records from East Valley Mental Health Clinic. This argument is misplaced.

Since social security hearings are not adversarial, the ALJ must fully and fairly develop the record. Dixon v. Heckler, 811 F.2d 506, 510 (10th Cir. 1987) (holding that the ALJ has a basic duty to "inform himself about facts relevant to his decision"). When, as here, a claimant is not represented by counsel, an ALJ must be "especially diligent in exploring for all relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). Moreover, the ALJ must be vigilant in those cases involving a mentally ill claimant who may not be able to protect him or herself. Id.

"The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. After an ALJ assists to develop the record by appropriate means, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citing Tonapetyan, 242 F.3d at 1150)). Ultimately, however, a claimant for social security benefits carries the burden of proving he is disabled. 42 U.S.C. § 423(d)(5)(A); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009)

Here, once put on notice that Plaintiff may have a mental limitation, the ALJ referred Plaintiff to a consultative psychological examination with Dr. Chandler. That was appropriate means of developing the record under the circumstances. See Tonapetyan, 242 F.3d at 1150; see

---

[3] Plaintiff complains that he was improperly subjected to a "sit and squirm" test because the ALJ described observations of Plaintiff from the hearing to demonstrate that Plaintiff's mental limitations were "mild." See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985). These observations are no moment, however, because the ALJ presented other valid reasons to reject Dr. Chandler's findings in conjunction with personal observations.

also Breen v. Callahan, 1998 U.S. Dist. LEXIS 7795, at *9 1998 WL 272998 (N.D. Cal. May 22, 1998) (the ALJ's obligation to develop the record is triggered by "the presence of some objective evidence in the record suggesting the existence of a condition which could have a material impact on the disability decision"). But after receiving Dr. Chandler's report, the ALJ determined that the record was not ambiguous because the substantial medical evidence did not support a mental disability.

Nor was the record inadequate for the ALJ to properly evaluate the evidence. After appropriately developing the record by ordering the consultative examination, "[t]he ALJ, with support in the record, found the evidence adequate to make a determination regarding [Plaintiff's] disability." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Contrary to Plaintiff contends here, "[t]he ALJ is not obliged to undertake the independent exploration of every conceivable condition or impairment a claimant might assert." Aker v. Astrue, No. EDCV 11-1374 JC, 2012 U.S. Dist. LEXIS 64710, at *8, 2012 WL 1605103 (C.D. Cal. May 8, 2012). Again, since the substantial medical evidence before the ALJ did not support a mental limitation, the ALJ's interpretation of the record was a reasonable one.

### III. DISPOSITION

Based on the foregoing, Plaintiff's Motion for Summary Judgment (Docket Item No. 19) is DENIED and Defendant's Motion for Summary Judgment (Docket Item No. 20) is GRANTED.

**IT IS SO ORDERED.**

Dated: September 27, 2012

EDWARD J. DAVILA
United States District Judge

10
Case No. 5:11-cv-02360 EJD
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT